UNITED STATES v. LAKE DRUMMOND CANAL & WATER CO. et al.

(District Court, E. D. North Carolina. November 19, 1915.)

NAVIGABLE WATERS ☞26—ACTION TO REQUIRE REMOVAL OF OBSTRUCTION—
OWNERSHIP OF BRIDGE.

> The United States *held* not entitled to a writ of mandamus to compel defendants to remove the remains of a bridge from a canal which now constitutes a navigable public waterway; it appearing from the evidence that neither of defendants has or ever had any title to or interest in either the canal or the bridge.

> [Ed. Note.—For other cases, see Navigable Waters, Cent. Dig. §§ 133–166; Dec. Dig. ☞26.]

Application by the United States for a writ of mandamus commanding the Lake Drummond Canal & Water Company or C. L. and W. E. Hinton to remove obstructions to navigation from Turner's Cut, a navigable stream in the state of North Carolina. Proceeding dismissed.

Francis D. Winston, U. S. Dist. Atty., of Windsor, N. C.

Ward & Thompson, of Elizabeth City, N. C., for defendant Lake Drummond Canal & Water Co.

Aydlett & Simpson, of Elizabeth City, N. C., for defendants Hinton.

CONNOR, District Judge. An inspection of the pleadings and records introduced upon the hearing discovers the following facts relevant to the controversy between the government and the defendants:

Pursuant to a charter granted by the General Assemblies of the states of North Carolina and Virginia (Session 1790, 2 Rev. Stat. [N. C.] p. 217), the Dismal Swamp Canal Company, during the latter years of the eighteenth century, cut a canal for the purpose of navigation, extending from the Elizabeth river in the state of Virginia to the Pasquotank river in the state of North Carolina and operated said canal in accordance with the provisions of its charter until the year 1880. Pursuant to the joint action of the courts of pleas and quarter sessions of the counties of Camden and Pasquotank, during the year 1847, a public road was ordered to be constructed between the said counties, and a rate of tolls fixed to be charged for persons and vehicles passing over said road. The work of constructing and operating the road and the right to charge tolls for the use thereof was leased or farmed out to Wm. R. Abbott for the term of 100 years. The road was constructed by said Wm. R. Abbott, pursuant to said contract with the counties of Camden and Pasquotank, and operated by him until the 15th day of November, 1850, when he conveyed and assigned to Thomas F. Grandy and Willis S. Grandy all of his right, title, and interest in said road, with all of the privileges, easements, and emoluments appertaining thereto, and they assumed all of the duties incident thereto. By mesne conveyances all of the right, title, and interest in said road and bridge, on November 6, 1909, passed to and vested in defendants C. L. and W. E. Hinton, and they are now the owners thereof. On January 7, 1851, W. H. Riggs and others executed a paper writing, in which it is recited that:

"The undersigned, understanding that it is contemplated to cut a canal from the southern terminus of the Dismal Swamp Canal, to a point on the Pasquotank river near what is called 'Sawyers Landing,' and owning the land through which said canal must pass, do hereby agree (in consideration of the anticipated benefit that may accrue, not only to themselves, but to the public generally, from the construction of said canal) to convey by deed to the president and directors of the Dismal Swamp Canal Company so much land not exceeding 300 feet in width as may be required for the construction of said work."

Pursuant to this agreement the persons who signed this paper writing on September 12, 1851, executed a deed conveying to the Dismal Swamp Canal Company a strip of land 300 feet wide "following the tract recently cleared for the purpose to enter the Pasquotank river, near what is called 'Sawyers Landing.'" Shortly after the execution of this deed the Dismal Swamp Canal Company caused a canal to be cut through said strip of land, about 60 feet wide and 3 miles long, and known as "Turner's Cut." This canal crossed the public toll road hereinbefore referred to. A bridge was built over the "Cut," where it crossed the road, by the Dismal Swamp Canal Company, with a draw for the purpose of allowing boats to pass. The testimony in regard to the construction and maintenance of the bridge is not very clear, but tends to support the contention, made by defendants C. L. and W. E. Hinton, that it was by the Dismal Swamp Canal Company. The purpose of cutting the canal or "Turner's Cut" was to avoid the necessity of passing around a bend of Pasquotank river known as "Moccasin Track." Its name sufficiently indicates its character. W. J. Spence, 80 years old, says that he knows "Moccasin Track." It is a little part of the Pasquotank river. Before "Turner's Cut" was dug, they went through there into the Dismal Swamp. Another witness says that it is very narrow, crooked, shallow, and impassable. It appears from the record that the Dismal Swamp Canal Company, on July 1, 1867, for the purpose of securing the payment of a bonded indebtedness of $200,000, executed to James Cornick and others, trustees, a deed conveying—

"all and singular that work of internal improvement, the property of said company, known as and called the Dismal Swamp Canal, with all and singular the lands, tenements, hereditaments, and appurtenances adjoining, belonging to, or connected with the said canal, or belonging to said company."

By successive conveyances, all of the property conveyed by said deed, on the 30th day of July, 1892, vested in the defendant the Lake Drummond Canal & Water Company by deed executed by Theodore S. Garnett, trustee, to said company. It appears that, on August 4, 1884, Henry Roberts, superintendent of the Dismal Swamp Canal Company, in a report to Capt. E. A. Hinman, Corps of Engineers, referred to "Turner's Cut" as having—

"been built by the Dismal Swamp Canal Company, at a cost of $50,000, for free navigation to avoid 'Moccasin Track,' which is unnavigable, and to better connect the Dismal Swamp Canal with deep water in Pasquotank river. No one claims it, but the Dismal Swamp Canal Company has maintained it to date. There is no deed of it on record."

On August 27, 1884, Capt. Hinman made a report to the Chief of Engineers, U. S. A., in regard to proposed improvements by the gov-

ernment, recommending "Turner's Cut" as "worthy of improvement." He says:

"It is presumed that the ownership of it is not in question for this purpose."

Pursuant to an act of Congress the government deepened and widened "Turner's Cut," treating it as a part of Pasquotank river, without any objection on the part of the Dismal Swamp Canal Company, or its successor in title to the canal. The bridge across "Turner's Cut" was permitted to fall into decay and finally "went down."

At the Fall term, 1912, of the superior court of Camden county, the defendants C. L. and W. E. Hinton, the owners of the "toll road" hereinbefore referred to, instituted an action against defendant Lake Drummond Canal & Water Company, alleging that, as successor in title to the Dismal Swamp Canal Company, said company was the owner of "Turner's Cut" and under obligation to maintain and keep in repair the bridge over said "Cut," alleging the failure to perform its duty in that respect, and praying for a mandatory injunction commanding it to repair said bridge. The defendant company, in its answer to the complaint, denied that it was the owner of, or was operating "Turner's Cut," or any part thereof, or had any interest therein. Upon the trial of said action it was adjudged by the court, and upon appeal to the Supreme Court held and decided that:

"While the Dismal Swamp Canal Company, predecessor in title of defendant, cut the waterway known as 'Turner's Cut,' it was not a part of the property which it held under its franchise, but was merely an adjunct or convenience which it operated. The title to said 'Turner's Cut' was not a part of the franchise and did not pass by the defendant's purchase. The United States subsequently took it over, and for 30 years has been expending money upon it as a part of the navigable waters of the state, and the defendant has not been charging toll or exercising control over it." Opinion of Clark, C. J., in Hinton v. Canal Co., 166 N. C. 484, 82 S. E. 844.

While two of the justices dissented from this opinion, a petition to rehear has been filed and denied. It is therefore the final determination of the law of the case. From this construction of the deeds under which defendant Canal Company owns the Dismal Swamp Canal, it logically follows that "there is no obligation, express or implied, requiring it to maintain the bridge." This construction of the deeds appears to be the same which the officers of the Lake Drummond Canal Company put upon it. W. B. Brooks says:

"I was elected president of the Lake Drummond Canal & Water Company at the time of its incorporation in 1892, and continued as president until October 26, 1906, and am now one of the directors of the company. Throughout the whole history of the company I have had direction of its construction and operation, and am familiar with all the conditions relating to its ownership. * * * At no time since the company owned the canal has it claimed to own that canal called 'Turner's Cut.' * * * The government had charge of 'Turner's Cut.' It has appropriated large sums of money for its maintenance, and has same, and the defendant company, not only has exercised no rights over same, but has never claimed any right, title, or interest in 'Turner's Cut,' or any part thereof."

M. K. King, the present president of the company, testifies to the same effect. It is conceded that the bridge across "Turner's Cut" has fallen into decay, and, with the exception of the abutment and a por-

tion of the structure extending some distance into the water, has disappeared. The government alleges, in its petition for the writ of mandamus, that this portion of the structure is a menace to and endangers the safety of boats passing through the "Cut." This is true. The government demands that either the defendant Lake Drummond Canal Company, or defendants C. L. Hinton and W. E. Hinton, be commanded to remove the structure, or such parts thereof as remain standing.

The Supreme Court of the state having decided that the Lake Drummond Canal & Water Company is not the owner of "Turner's Cut," and therefore has no legal relation to the "Cut," and therefore owes no duty to maintain the bridge, it is difficult to perceive upon what principle of law or right it is under any obligation to remove a structure which it never placed in or over the "Cut," or claimed any right to use. Assuming that the government acquired the right to control and use "Turner's Cut" as a navigable waterway by improving it, widening its banks, and deepening its channel, and that this was done prior to the purchase by the defendant Lake Drummond Canal & Water Company of the property of the Dismal Swamp Canal Company, no duty devolved upon the defendant corporation to remove the structure. It makes no claim to ownership, or objection to the appropriation by the government of the "Cut" as a public highway. If "Turner's Cut" was, as it would seem, the property of the Dismal Swamp Canal Company, and, as held by the Supreme Court, did not pass to the defendant corporation, the title, unless divested by appropriation by the government, in regard to which no opinion is expressed, is still the property of the original owner. When the government assumed control of the "Cut," the bridge was standing. No one, it seems, has ever objected to its removal, or is now objecting to the removal of the portion of it claimed to be an obstruction to navigation. The Lake Drummond Canal & Water Company is under no obligation to remove a structure which it never constructed, nor maintained, over a canal which it never owned or operated, and in regard to which it never claimed nor exercised any control.

It is insisted that, if the duty to remove the structure is not upon the Lake Drummond Canal & Water Company, then it must be upon defendants C. L. and W. E. Hinton. The case, as to them, is very simple. A public toll road was established by competent, lawful authority during the year 1848, and leased to the predecessor in title to defendants. In 1857 the Dismal Swamp Canal Company dug "Turner's Cut" across the road; and while it does not very clearly appear, it is quite evident, as it was in duty bound to do, it constructed a bridge across the "Cut," and for many years maintained it in such manner as to enable boats to pass through and persons and vehicles to pass over the "Cut." When the Canal Company sold its other property and ceased to operate the canal and the "Cut," its successor in title to the Dismal Swamp Canal having no interest in the "Cut," and therefore no duty being imposed upon it to maintain the bridge, it fell into decay. Defendants C. L. and W. E. Hinton, the owners of the "toll road," supposing that the Lake Drummond Canal & Water Company

was under obligation to maintain the bridge, appealed to the court for a mandatory injunction compelling it to do so, or, if not entitled thereto, to a judgment for damages for the breach of duty to maintain the bridge. The court decided that they were not entitled to either, for the reason hereinbefore stated. The defendants C. L. and W. E. Hinton are deprived of their property; the "toll road" is destroyed—cut in two; the government has appropriated "Turner's Cut"; the court has held that the title to the "Cut" is not in the Lake Drummond Canal & Water Company; the defendants C. L. and W. E. Hinton never constructed nor maintained any bridge over or across "Turner's Cut." It is difficult to perceive how they are under any obligation to remove such portion of it as may remain.

Neither of the defendants are making any objection to the assumption by the government of control of "Turner's Cut" as a navigable highway, or claiming any right to or interest therein. Accepting the decision of the Supreme Court of North Carolina as a correct view of the law, as the parties are compelled to do so, the title to "Turner's Cut" is either in the Dismal Swamp Canal Company or it has been acquired by appropriation by the government. From neither view are either of the defendants under any obligation to remove the structure. So far as they are concerned, there is no reason why the officers of the government should not proceed to do so.

The proceeding will be dismissed, at the cost of the plaintiff.